**Bertell OLLMAN, Plaintiff,**

v.

**Rowland EVANS and Robert Novak, Defendants.**

**Civ. A. No. 79–0526.**

United States District Court,

District of Columbia.

Sept. 26, 1979.

David Rein, Washington, D. C., for plaintiff.

Robert H. Loeffler, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court is Defendant's Motion for Summary Judgment in a defamation action brought by Bertell Ollman against Rowland Evans and Robert Novak. This Court has jurisdiction under 28 U.S.C. § 1332 and Rule 56 of the Federal Rules of Civil Procedure.

The material facts in this case are not in dispute. Plaintiff is a Marxist professor of political science. He was nominated for the position of Chairman of the Department of Government and Economics at the University of Maryland. Defendants Evans and Novak are syndicated columnists. They wrote a scathing article that questioned the nomination. Plaintiff was subsequently denied the above-stated position. He claims that the article damaged his reputation as a scholar, causing great distress and mental anguish.

The alleged defamatory article was published in The Washington Post, The New York Post, and other newspapers throughout the country on May 4, 1978.[1] Plaintiff

---

1. The article may be summarized as follows: His [Ollman's] candid writings avow his desire to use the classroom as an instrument for preparing what he calls "the revolution." Whether this is a form of indoctrination that could transform the real function of a university and transcend limits of academic freedom is a concern to academicians who are neither McCarthyite nor know-nothing . . .

asserts that the article is defamatory because (1) it denies Ollman's reputation as a scholar and portrays him as a political activist, (2) it states that Plaintiff is widely viewed in his profession as a political activist, (3) it alleges that Ollman is an outspoken proponent of "political Marxism," (4) it asserts that Ollman is a "pamphleteer," and (5) it contends that Plaintiff desires to use the classroom as a tool for preparing what Ollman calls "the revolution." Defendants move for summary judgment on one issue, namely: they claim that the article in question is essentially a statement of opinions and conclusions, and as such no cause of action for defamation arises.

The First Amendment precludes liability based on the utterance of defamatory opinions. As the Supreme Court stated in *Gertz*

> While Ollman is described in news accounts as a "respected Marxist scholar," he is widely viewed in his profession as a political activist. Amid the increasingly popular Marxist movement in university life, he is distinct from philosophical Marxists. Rather, he is an outspoken proponent of "political Marxism."
>
> He twice sought election to the council of the American Political Science Association as a candidate of the "Caucus for a New Political Science" and finished last out of the 16 candidates each time. Whether or not that represents a professional judgment by his colleagues, as some critics contend, the verdict clearly rejected his campaign pledge: "If elected . . . I shall use every means at my disposal to promote the study of Marxism and Marxist approaches to politics throughout the profession."
>
> Ollman's intentions become explicit in "On Teaching Marxism and Building the Movement," his article in the Winter 1978 issue of New Political Science. Most students, he claims, conclude his course with a "Marxist outlook." Ollman concedes that will be seen "as an admission that the purpose of my course is to convert students to socialism."
>
> That bothers him not at all because "a correct understanding of Marxism (as indeed of any body of scientific truths) leads automatically to its acceptance." Non-Marxist students are defined as those "who do not yet understand Marxism." The "classroom" is a place where the students' "bourgeois ideology is being dismantled." "Our prior task" before the revolution, he writes, "is to make more revolutionaries. The revolution

*v. Welch,*[2] "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."[3] As the *Gertz* Court noted, however, "there is no constitutional value in false statements of fact."[4] For any statement to be actionable, it must depict false facts in a defamatory light.

The First Amendment requires indefeasible protection of opinion to facilitate the free flow of ideas. Opinion *qua* opinion cannot provide the basis for an actionable claim. A cause of action will accrue, however, if a statement implies the existence of undisclosed "facts" which are both false and defamatory.[5] According to the Restatement (Second), Torts, § 566.

> will only occur, when there are enough of us to make it. . . ."
>
> Ollman's principal scholarly work, "Alienation: Marx's Conception of Man in Capitalist Society," is a ponderous tome in adoration of the master (Marxism "is like a magnificently rich tapestry"). Published in 1971, it does not abandon hope for the revolution forecast by Karl Marx in 1848. "The present youth rebellion," he writes, by "helping to change the workers of tomorrow" will, along with other factors, make possible "a socialist revolution."
>
> Such pamphleteering is hooted at by one political scientist in a major eastern university, whose scholarship and reputation as a liberal are well known. "Ollman has no status within the profession, but is a pure and simple activist," he said. Would he say that publicly? "No chance of it. Our academic culture does not permit the raising of such questions."

2. 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

3. Id., at 339–340, 94 S.Ct. at 3007.

4. Id., at 340, 94 S.Ct. at 3007.

5. Plaintiff's burden of proof depends upon whether he is a public official, public figure or private person. *New York Times v. Sullian*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 139, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Gertz v. Welch, supra*. The varying burdens of proof, however, do not determine whether a cause of action has accrued. *Herbert v. Lando*, 44 U.S. 153 at 175–177, 99 S.Ct. 1635, 60 L.Ed.2d 115.

A defamatory communication may consist of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis of the opinion.

If an author bases his opinion on disclosed facts, the opinion itself does not give rise to a cause of action. Should the underlying facts prove false, they (rather than the opinion) would be actionable. If the author supplies no such facts, but utters a defamatory opinion, a claim arises. It is the libelous underlying "facts," rather than the opinion, that makes the defamatory statement actionable.

This approach strikes a balance between competing legitimate needs. It encourages unfettered inquiry, contemplation, and communication, yet does not preclude redress to individuals for damage to their reputation. This analysis has been adopted in three jurisdictions,[6] and is adopted here.

It is imperative to distinguish between statements of opinion and assertions of fact. While the difference may be hazy at times, this Court finds that "loosely definable, variously interpretable statements . . . made inextricably in the context of political, social, or philosophical debate"[7] are opinions. Statements imputing objective reality, uncolored by possible interpretation or bias, are assertions of fact.

This Court has carefully parsed the article in question. While Defendants refer to Plaintiff's writings and speeches, Ollman's statements are selected to reflect Defendants' opinion. Portions contrary to Evan's and Novak's viewpoint are carefully omitted. While this may be thought of as biased journalism, it is afforded the same constitutional protection as writing thought of as "balanced."

Defendants accuse Plaintiff of being a "political Marxist," a "political activist," and a "pamphleteer." These are merely the opinions of two people, couched in obscure words that defy concrete definition. Defendants also submit that Plaintiff lacks a reputation in his field as a scholar. A person's reputation is derived from opinion. Conclusions based on opinion must by definition be opinion. Finally, Defendants' claim that "Ollman's writings candidly profess the desire to use the classroom as an instrument for preparing what he [Ollman] calls the 'revolution.'" This statement reflects nothing more than Defendants' interpretation of Plaintiff's writings.

Under *Gertz* and its progeny, no cause of action arises unless Defendants' opinions imply underlying false and defamatory statements of fact. No such implication is apparent. Rather, Defendants have quoted Plaintiff's writings and speeches, and have cited his campaign for election to the council of the American Political Science Association as "proof" that their allegations are grounded in fact. There is no evidence that any of the data supporting Evan's and Novak's conclusions is false or defamatory. Nor is there any reason to assume that Defendants relied on any other evidence in support of their contentions.

Accordingly, it is by the Court this 26th day of September, 1979,

ORDERED, that Defendants' Motion for Summary Judgment is hereby GRANTED.

---

**6.** See *Hotchner v. Castillo-Puche*, 551 F.2d 910 at 913. (2d Cir. 1977) *cert. den.* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95; *Buckley v. Littell*, 539 F.2d 882 at 893 (2d Cir. 1976) *cert. den.* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777; *Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir. 1978) *cert. den.* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773; *Yerkie v. Post-Newsweek Stations*, 470 F.Supp. 91 (D.Md.1979).

**7.** *Buckley v. Littell, supra*, at 895.